IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELINDA MARKOVICH, | Civil Action |
| Plaintiff, | No. 2:21-cv-1596 |
| v. | |
| TRANSTAR, LLC, U.S. STEEL CORPORATION and UNION RAILROAD COMPANY, LLC, | |
| Defendants. | JURY TRIAL DEMANDED |

## CIVIL COMPLAINT

Plaintiff, Melinda Markovich, ("Markovich" or "Plaintiff") by undersigned counsel, files this Civil Complaint and in support states the following:

### I. Jurisdiction

1. The jurisdiction of this Court is invoked pursuant to Section 7 of the Age Discrimination in Employment Act, 29 U.S.C. §626(c)(1); 28 U.S.C. §§1331 and 1343(a)(4); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 and this Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367.

2. Plaintiff has satisfied all procedural and administrative requirements set forth in 29 U.S.C. §626 in that:

   a. Plaintiff filed a timely written charge of age discrimination and gender discrimination with the Equal Opportunity Employment Commission ("EEOC") on August 3, 2020, and also cross filed with the Pennsylvania Human Relations;

   b. Plaintiff received a Notice of Right to Sue from the EEOC dated August 11, 2021;

   c. This action was filed with this Court within 90 days of receipt of that Notice;

and

    d.    More than one year has lapsed since the date Plaintiff filed her PHRC complaint.

## II. The Parties

3. Plaintiff, Melinda Markovich, is an adult individual who resides at 104 Pembrooke Drive, Delmont, PA 15626. She is 62 years old.

4. Defendant, Transtar, LLC ("Transtar") is a for-profit corporation under the laws of Delaware with a corporate headquarters and principle place of business at 900 Thompson Run Road, Monroeville, PA 15146.

5. U.S. Steel Corporation ("U.S. Steel") is a for-profit corporation incorporated under the laws of Delaware with a corporate headquarters and principle place of business at 600 Grant Street, 18th Floor, Pittsburgh, PA 15219.

6. Union Railroad Company, LLC ("Union Railroad") is a for-profit corporation incorporated under the laws of Delaware with a corporate headquarters and principle place of business at 900 Thompson Run Road, Monroeville, PA 15146.

7. At all times relevant to this case, Defendants were employers within the meaning of the Age Discrimination in Employment Act, 29 U.S.C. §630(b).

8. At all times relevant to this case, Defendants acted or failed to act by and through its duly authorized agents, servants, and employees, who conducted themselves within the scope and course of their employment.

## III. Factual Background

**A.    The U.S. Steel Companies**

9. U.S. Steel is an integrated steel producer of flat-rolled and tubular products with major

production operations in North America and Europe.

10. For all dates relevant to this action, Transtar was one of U.S Steel's wholly owned subsidiaries and was responsible for meeting the transportation needs of U.S. Steel's steel-making facilities, which includes transporting raw materials; providing in-plant transportation and movement of semi-finished steel; and moving finished products to their destination. As a result, U.S. Steel was dependent upon Transtar to meet the continuing needs of its day-to-day operations.

11. Transtar is comprised of the following railway companies: Union Railroad, the Lake Terminal Railroad Company, the Lorain Northern Company, Fairfield Southern Company, Inc., Delray Connecting Railroad Company, Texas & Northern Railroad Company and the Gary Railroad.

12. Upon information and belief, U.S. Steel and Transtar directly manage and control the terms and conditions of Union Railroad employees which reflects the integrated nature of Union Railroad's operations with both Transtar and U.S. Steel.

13. Upon information and belief, U.S. Steel and Transtar jointly control the terms and conditions of employment of Union Railroad employees as Union Railroad is an entity that was created to benefit and support Transtar's and U.S. Steel's operations.

**B.     Union Railroad's  Application of Its Demerit Policy**

14. Union Railroad's demerits policy was created to provide a uniform structure to address employee rule and policy violations in a consistent and fair manner. According to Union Railroad, the policy serves as a tool to assure rule compliance while offering employees the opportunity to correct poor behavior as well as to facilitate additional training where necessary.

15. The demerits policy is used to manage employee discipline for offenses such as tardiness, safety violations and misuse of carrier property.

16. Under the policy, managers may use informal coaching in lieu of formal discipline (demerits) for minor violations and have significant discretion with respect to the number of demerits assessed if they elect to issue demerits.

17. If a manager elects to issue demerits, the maximum number of demerits that can be assessed for a single violation is 60. Employees who reach 100 demerits over time are subject to termination.

18. Union Railroad's demerits policy includes a provision for the removal of demerits from an employee's personnel records if the employee does not accrue additional demerits in the 12, 24 and 36 months following his or her last offense.

**C. Improper Termination of Plaintiff's Employment**

19. Markovich worked for Defendants from 1998 until February 11, 2020. She last held the position of Head Clerk

20. Over the course of her 22-year tenure, Markovich was an exemplary employee. She was frequently provided with praise and accolades.

21. Markovich met all the necessary performance metrics and maintained a zero-demerit record.

22. Markovich was taken out of service on January 17, 2020 after a two-week investigation regarding her whereabouts from December 16-17, 2019 and from December 19-29, 2019.

23. Markovich was not in her office on the days in question but was working from home, at the direction and approval of her supervisor, Darren Beasock ("Beasock").

24. Unbeknownst to Markovich, Beasock had not been truthful to senior management and HR about directing and approving Markovich's remote work arrangement.

25. Around the time of the investigation, Beasock texted Markovich, instructing her to lie to Human Resources by stating that she was working off site from another building on the property during the dates in question.

26. Instead, Markovich made the honorable, albeit fateful, decision to be honest. On Friday, January 17, 2020, Markovich told Defendant's Human Resources and Labor Relations representatives that she was working from home and was directed to do so by her supervisor.

27. Markovich was immediately taken out of service and received two charge letters for the same alleged violation for a total of 200 demerits and, ultimately, termination.

28. Markovich received a total of 200 demerits, for alleged infractions that her supervisor forced her to do, which violated the companies' demerit policy.

29. Markovich received more demerits than male and younger employees who had committed similar or more egregious offenses, particularly with regard to intentional misrepresentations and lack of integrity.

30. It is believed that the U.S. Steel Companies acted willfully and in reckless disregard of Markovich's rights under the ADEA and the PHRA when it targeted her with excessive demerits under the policy because they believed that due to her age, she was or would be unable to perform the essential functions of his job.

31. Markovich, however, was able to perform the essential functions of her job as at all relevant times.

32. It is also believed that U.S. Steel Companies acted willfully and in reckless disregard of Markovich's rights under Title VII of the Civil Rights Act of 1964 when it disciplined her with a disproportionately higher number of demerits and other discipline, including but not

limited to termination, than male employees who had committed similiar or more egregious offenses.

33. As a result of the U.S. Steel Companies' discrimination, Markovich has suffered and will continue to suffer a substantial loss of earnings, including, but not limited to, loss of salary, bonuses, benefits, health insurance, life insurance, and other emoluments of employment.

34. As a further direct and proximate cause of the U.S. Steel Companies' discrimination, Markovich's reputation and career have been damaged. Markovich has also experienced physical pain and suffering, and severe emotional distress.

## STATEMENT OF CLAIMS

### Count One

**Violations of the Age Discrimination in Employment Act
(Markovich v. U.S. Steel, Transtar, and Union Railroad)**

35. Plaintiff incorporates by reference the allegations in paragraphs 1 through 34 as if fully restated herein.

36. At all relevant times, U.S. Steel and Transtar continuously employed more than 20 employees and were covered employers as defined by the Age Discrimination in Employment Act ("ADEA" – 29 U.S.C. §§ 621 *et seq.*).

37. At all relevant times, U.S. Steel and Transtar acted as joint employers of Plaintiff through their relationship with the U.S. Steel Companies including but not limited to various acts such as controlling Plaintiff's work schedule and conditions of employment to a substantial degree.

38. For example, Transtar issued system orders and work-related rules, regulations, and protocol to Plaintiff and Plaintiff's coworkers related to Plaintiff's work duties.

39. Said rules, regulations, and protocol were frequently communicated to Markovich

and Markovich's supervisors by Transtar representatives via email correspondence and other means.

40. In fact, certain Transtar representatives, including but not limited to the General Manager of Operations, issued memoranda to Plaintiff expressly addressed to "All Transtar Employees".

41. In addition, representatives on behalf of Transtar, U.S. Steel and Union Railroad worked closely together to draft, implement, and enforce the demerits policy at issue.

42. Defendant fired Markovich because of her age, in violation of the ADEA.

43. Defendant's violation of the ADEA was willful.

WHEREFORE, Markovich demands judgment as follows:

a. That Defendant be ordered to reinstate Plaintiff into the position she occupied prior to Defendant's discriminatory actions, together with all benefits incident thereto, including, but not limited to wages, benefits, training, and seniority;

b. That Defendant be required to compensate Plaintiff for the full value of wages she would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest until the date Plaintiff is offered employment into a position substantially equivalent to the one which Plaintiff occupied at the time of her termination;

c. That Defendant be required to reinstate Plaintiff's pension standing, including an uninterrupted reinstatement of her seniority and vesting;

d. That Defendant be required to provide Plaintiff with front pay in the event reinstatement is not feasible;

e. That Defendant be required to compensate Plaintiff for lost benefits, including profit sharing and/or pension benefits until Plaintiff's normal retirement date;

f. That a final judgment in favor of Plaintiff and against Defendant be entered for liquidated damages in an amount equal to the amount of wages due and owing Plaintiff as provided by 29 U.S.C. §§626(b) and 216(b);

g. That Defendant be enjoined from discriminating against Plaintiff in any manner that violates the ADEA;

    h.    That Plaintiff be awarded against Defendant the costs and expenses of this litigation and a reasonable attorney fee; and

    i.    That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

## Count Two

**Violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a)(1)**
**(Markovich v. U.S. Steel, Transtar, and Union Railroad)**

44.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 43 as if fully restated herein.

45.    Defendant fired Markovich but did not fire male employees whose conduct was similar or more severe and egregious than Markovich's conduct.

46.    Defendant fired Markovich, and otherwise discriminated against her in the terms, conditions, and privileges of employment because of her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a)(1).

47.    Defendant's violation of Title VII was undertaken with malice or reckless indifference to Plaintiff's federally protected right to not be discriminated against because of her sex.

48.    As a direct and proximate result of Defendant's discharge of Markovich because of her sex, she has suffered emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of her life, and other non-pecuniary losses.

WHEREFORE, Markovich demands judgment against Defendant and the following relief:

    a.    That the Court enter a judgment declaring Defendant's actions to be unlawful and in violation of Title VII;

    b    That Defendant be ordered to reinstate Plaintiff and provide her accumulated seniority, fringe benefits and all other rights;

    c.    That Defendant be required to compensate Plaintiff for the full value of wages she would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest from the date of discharge, in addition to reimbursement for lost pension, social security, experience, training opportunities and other benefits;

    d.    That the Court award Plaintiff compensatory damages as a result of Defendant's violations of Title VII;

    e.    That the Court award Plaintiff punitive damages;

    f.    That Defendant be enjoined from retaliating against Plaintiff in any manner that violates Title VII;

    g.    That Plaintiff be awarded against Defendant the costs and expenses of this litigation and a reasonable attorney fee; and

    h.    That the Court grant Plaintiff additional relief as may be just and proper.

## Count Three

### Violations of the Pennsylvania Human Relations Act
### (Marsh v. U.S. Steel, Transtar, Union Railroad)

49.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 48 as if fully restated herein.

50.    Defendant's firing of Markovich violated the PHRA, 43 Pa. Conns. Stat.Ann. §955(a) et seq.

51.    As a direct result of Defendant's violation of the PHRA, Markovich has lost wages and other economic benefits of her employment with Defendant, in addition to suffering extreme emotional distress, depression, inconvenience and humiliation.

WHEREFORE, Markovich requests the following:

    a.    That the Court enter a judgment declaring Defendant's actions to be unlawful and in violation of the Pennsylvania Human Relations Act;

    b    That Defendant be ordered to instate Plaintiff and provide her accumulated seniority, fringe benefits and all other rights;

  c. That Defendant be required to compensate Plaintiff for the full value of wages she would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest from the date of discrimination, in addition to reimbursement for lost pension, social security, experience, training opportunities and other benefits;

  d. That the Court award Plaintiff compensatory damages as a result of Defendant's violations of the Pennsylvania Human Relations Act;

  e. That Defendant be enjoined from discriminating against Plaintiff in any manner that violates the Pennsylvania Human Relations Act;

  f. That Plaintiff be awarded against Defendant the costs and expenses of this litigation and a reasonable attorney fee; and

  g. That the Court grant Plaintiff additional relief as may be just and proper.

Respectfully submitted,

**EDGAR SNYDER & ASSOCIATES**

/s/ *Amy N. Williamson*
Amy N. Williamson
PA I.D. No. 90657
US Steel Tower, 10th Floor
600 Grant Street
Pittsburgh, PA 15219
(412) 394-4458
(412) 391-7032 (Fax)
awilliamson@edgarsnyder.com

Attorney for Plaintiff